UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

AARP, a District of Columbia Corporation,

    Plaintiff,

vs.                                       Case No.  3:03-cv-1033-J-99MCR

KRAMER LEAD MARKETING GROUP, a
Texas corporation, CHOICEPOINT, INC., a
Georgia corporation, and ALLYN KRAMER, an
individual,

    Defendants.
_____/

## **O R D E R**

**THIS CAUSE** is before the Court on Plaintiff's Motion to Compel Discovery and/or Motion for *In Camera* Review (Doc. 386) filed September 28, 2005. Defendants filed a response in opposition on October 12, 2005 (Doc. 392) and on October 17, 2005, Plaintiff filed a motion seeking leave to file a reply brief. (Doc. 401).[1] Accordingly, the matter is ripe for judicial review.

### **I. BACKGROUND**

On December 5, 2003, Plaintiff filed an action alleging violations of the Lanham Act as well as Florida statutory and common laws. (Doc. 1). The complaint alleges Defendants improperly utilized the AARP name in mailers or lead cards Defendants sent to consumers. Defendants sell the mailers to third parties who use them to

---

[1] The Court reviewed the Reply brief. Accordingly, Plaintiff's motion to file this brief (Doc. 401) will be granted.

-1-

advertise their own products and services.  Plaintiff alleges the mailers cause confusion and that individuals who received the mailers believed they came from AARP and/or that the third parties associated with the mailers were endorsed by AARP.

In the instant Motion, Plaintiff argues that Defendants' are continuing to improperly withhold documents claiming they are protected by the work product doctrine.  (Doc. 386).  The Court has been dealing with this issue for some time.  Defendants originally designated thousands of documents as work product.  After several orders, Defendants produced the vast majority of the documents except for twenty-four emails.  These twenty-four emails are the documents at issue now.

## II.  DISCUSSION

Motions to compel discovery under Rule 37(a) are committed to the sound discretion of the trial court.  See Commercial Union Ins. Co. v. Westrope, 730 F.2d 729, 731 (11th Cir. 1984).  The trial court's exercise of discretion regarding discovery orders will be sustained absent a finding of abuse of that discretion to the prejudice of a party.  See Westrope, 730 F.2d at 731.

The overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts and therefore, embody a fair and just result.  See United States v. Proctor & Gamble Co., 356 U.S. 677, 682, 78 S.Ct. 983 (1958).  Discovery is intended to operate with minimal judicial supervision unless a dispute arises and one of the parties files a motion

requiring judicial intervention.  Furthermore, "[d]iscovery in this district should be practiced with a spirit of cooperation and civility."  Middle District Discovery (2001) at 1.

In the instant motion, Plaintiff claims that the remaining twenty-four emails withheld by Defendants are not protected by the work product doctrine as asserted by Defendants.  Alternatively, Plaintiff asks the Court to conduct an *in camera* review of the documents.  Because the Court has been dealing with these documents for some time and because of the limited number of documents still at issue, the Court ordered Defendants to produce the remaining twenty-four emails for an *in camera* inspection.  (Doc. 388).  Defendants filed these documents under seal on October 12, 2005 and the Court has reviewed them.

There are two categories of documents still at issue.  First, Defendants have withheld approximately twenty-two emails they claim are protected as work product because they are email communications between ChoicePoint and KLMG personnel reflecting the gathering of information requested to aid counsel in preparation of defending this suit and evaluating the claims against ChoicePoint.  Additionally, Defendants have withheld two documents because they claim these two emails reveal advice given by in-house legal counsel on what to say to KLMG customers regarding the cessation of the use of the AARP name on lead cards in response to allegations by AARP in the instant lawsuit.  The Court will address each of Plaintiff's contentions separately.

### A. Documents Reflecting the Gathering of Information Requested by Counsel

Defendants have withheld approximately twenty-two documents claiming they are work product because they reflect "the gathering of information to aid counsel in preparation of defending this suit and evaluating the claims" against ChoicePoint. (Doc. 392, p.4). Plaintiff argues that Defendants' descriptions of these documents have differed in various documents provided to Plaintiff. Accordingly, Plaintiff takes the position that Defendants' designations of these emails are unreliable and an *in camera* inspection should be conducted. Additionally, Plaintiff points out that "none of the subject emails were sent to or from a lawyer." (Doc. 386, p.11).

Claims of work product immunity are governed by Rule 26(b)(3) of the Federal Rules of Civil Procedure, which states in pertinent part:

> [A] party may obtain discovery of documents and tangible things otherwise discoverable ... and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

The work product protections of Rule 26(b)(3), however, typically apply "'only to documents prepared principally or exclusively to assist in anticipated or ongoing litigation.'" Bowne of New York City, Inc. v. AmBase Corp., 150 F.R.D. 465, 471

(S.D.N.Y. 1993) (quoting Martin v. Valley Nat. Bank of Arizona, 140 F.R.D. 291, 304 (S.D.N.Y. 1991)).  "Documents which do not refer to work product prepared by an attorney or other agent of a party to aid in forthcoming litigation, and which were generated in the ordinary course of business, are discoverable." Allendale Mut. Ins. Co. v. Bull Data Systems, Inc., 152 F.R.D. 132, 136 (N.D. Ill. 1993).  "In limiting work product to materials prepared 'in anticipation of litigation,' the drafters of Rule 26(b)(3) excluded from the rule's protection '[m]aterials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other non-litigation purposes.'"  Rule 26(b)(3), Fed.R.Civ.P. Advisory Committee Note.

Although the work product typically applies to material prepared by a party's attorney, materials drafted or prepared by non-attorneys can, under certain circumstances, be protected by the work product doctrine.  As the Supreme Court noted:

> At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.  But the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system.  One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.

U.S. v. Nobles, 422 U.S. 225, 238-39, 95 S.Ct. 2160 (1975).

"'The burden of establishing that a document is work product is on the party who asserts the claim.'" Freiermuth v. PPG Industries, Inc., 218 F.R.D. 694, 700 (N.D. Ala. 2003) (quoting, Hodges, Grant & Kaufmann v. U.S. Government, Dept. of the Treasury,

I.R.S., 768 F.2d 719, 721 (5th Cir. 1985)).  To satisfy this burden, the party asserting the privilege must make an "evidentiary showing based on competent evidence," rather than "mere conclusory or *ipse dixit* assertions."  CSX Transp., Inc. v. Admiral Ins. Co., 1995 WL 855421 *1 (M.D. Fla. 1995) (quoting, Bowne, 150 F.R.D. at 470) (citations omitted)).  Defendants have provided two affidavits from in-house counsel, Michael Perrett.  Additionally, the Court has reviewed the actual documents.

### 1. Document 1840

This document is an email from Scott Wheeler, the Vice President of Operations for ChoicePoint, seeking information from other employees.  In his affidavit, Perrett testifies that he instructed Mr. Wheeler to gather information to assist counsel in preparation for defending the instant litigation.  The Court believes the instant email is protected as work product as it was produced by a party or a party's agent in anticipation of litigation.

### 2. Document 186

Defendants contend this document is another email responding to Mr. Wheeler's request for information.  However, a review of the email indicates it was prepared for business purposes rather than in anticipation of litigation.  It is not responding to any of the questions posed in Mr. Wheeler's original email.  Accordingly, the Court will order Defendants to produce this email as well as the attachment no later than **Monday, November 7, 2005**.

### 3. Documents 357, 1835, 1908, 1928, 2837 and 2838

These documents appear to be responses to the email from Scott Wheeler seeking information for counsel to assist in the instant litigation. The Court finds these documents protected by the work product doctrine.

### 4. Documents 2372, 2373, 2374, 2375 and 2376

According to Defendants, these documents are part of an email chain between ChoicePoint personnel regarding the gathering of information as requested by outside counsel. After reviewing the documents, the Court is satisfied that they were produced in anticipation of litigation and are protected as work product.

### 5. Documents 343, 344, 1921, 442, 443 and 404

These documents are another series of emails between ChoicePoint employees regarding the gathering of usage reports. According to the affidavit of Michael Perrett, he requested the employees gather this information to assist counsel in defending this suit. The Court has reviewed the documents and again finds they were prepared by agents of ChoicePoint in anticipation of litigation and are not discoverable.

### 6. Documents 1554, 1565 and 1566

These documents are a series of emails starting with an October 21, 2004 email from Michael Perrett to Scott Wheeler asking for assistance gathering information for preparation of a damages calculation. Again, the Court has reviewed the documents and finds they were prepared by agents of Defendants for use in the instant litigation and therefore, are not discoverable by AARP.

### B. Documents Regarding What to Say to Customers Regarding the Cessation of Utilizing the AARP Name

Defendants have designated two emails from Scott Wheeler (Documents 202 and 211) to a "select group of three KLMG employees" conveying legal advice from in-house counsel on how to communicate to KLMG customers regarding the cessation of use of the AARP name on lead cards in response to the allegations in the AARP lawsuit as work product. (Doc. 392, p.7). The Court has reviewed these two documents and finds they are not protected work product. Instead, these emails simply reveal company policy in light of the instant litigation. Although the emails were generated upon advice of counsel and may reflect in-house counsel's opinions, they deal with company policy and as such must be produced. See Bank of New York v. Meridien Biao Bank Tanzania Ltd., 1996 WL 474177 *2 (S.D.N.Y. 1996) (holding that "a document is not subject to the work product doctrine when it relates to business operations, even if those operations are shaped by the threat of litigation."). As such, Defendants are instructed to produce these emails to Plaintiff no later than **Monday, November 7, 2005**.

In its August 31, 2005 Order (Doc. 370), the Court threatened to impose sanctions on any party taking an unreasonable position with respect to the instant motion. After reviewing the filings of the parties, the undersigned finds sanctions are not warranted. Although Defendants' position with respect to documents 202 and 211 is weak in light of the Court's August 31, 2005 Order, the undersigned finds Defendants have produced the vast majority of documents they previously withheld and properly designated most of the remaining documents at issue as work product.

Accordingly, after due consideration, it is

**ORDERED**:

1.     Plaintiff's Motion to Compel Discovery and/or Motion for *In Camera* Review (Doc. 386) is **GRANTED in part and DENIED in part** as discussed in the body of this Order.

2.     Plaintiff's motion to file a Reply brief (Doc. 401) is **GRANTED**.  The Clerk is directed to file the brief attached to Plaintiff's Motion for Leave to File a Reply (Doc. 401).

**DONE AND ORDERED** in Chambers in Jacksonville, Florida this  31st  day of October, 2005.

*Monte C. Richardson*

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record